IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

**In re:**

**ROSINA GUEVARA MONGE**
**AKA ROSINA MONGE GUEVARA**             **CHAPTER 7**
**JAVIER TORRES ROMERO,**

      **DEBTORS.**                    **CASE NO. 20-32815-KRH**

**TOYOTA LEASE TRUST,**

      **MOVANT,**

vs.

**ROSINA GUEVARA MONGE**
**JAVIER TORRES ROMERO**
**and WILLIAM A. BROSCIOUS, TRUSTEE,**

      **RESPONDENTS.**

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

**NOTICE**

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE IN THIS BANKRUPTCY CASE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)**

**TO:     ROSINA GUEVARA MONGE, AND JAVIER TORRES ROMERO, DEBTORS**
      **WILLIAM A. BROSCIOUS, TRUSTEE**

**IF YOU DO NOT WISH THE COURT TO GRANT THE RELIEF SOUGHT IN THE MOTION, OR IF YOU WANT THE COURT TO CONSIDER YOUR VIEWS ON THE MOTION, THEN WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE OF THIS MOTION, YOU MUST FILE A WRITTEN RESPONSE EXPLAINING YOUR POSITION WITH THE COURT AND SERVE A COPY ON THE MOVANT. UNLESS A WRITTEN RESPONSE IS FILED AND SERVED WITHIN THIS FOURTEEN (14) DAY PERIOD, THE COURT MAY DEEM OPPOSITION WAIVED, TREAT THE MOTION AS CONCEDED, AND ISSUE AN ORDER GRANTING THE REQUESTED RELIEF WITHOUT FURTHER NOTICE OR HEARING.**

**IF YOU MAIL YOUR RESPONSE TO THE COURT FOR FILING, YOU MUST MAIL IT EARLY ENOUGH SO THE COURT WILL RECEIVE IT ON OR BEFORE THE EXPIRATION OF THE FOURTEEN (14) DAY PERIOD.**

**THE PRELIMINARY HEARING IS SCHEDULED TO BE HELD ON AUGUST 19, 2020 AT 11:00 AM IN THE U.S. BANKRUPTCY COURT, 701 EAST BROAD STREET,**

Johnie R. Muncy, Esquire
Counsel for Movant
Samuel I White, P.C.
Bar No. 73248
1804 Staples Mill Road
Suite 200
Richmond, VA 23230
(804) 290-4290
File No. 76734

**RICHMOND, VA 23219, COURTROOM 5000.**

Toyota Lease Trust ("Movant") hereby moves this Court, pursuant to 11 U.S.C. §362, for relief from the automatic stay with respect to a **2018 Toyota Yaris IA VIN 3MYDLBYV4JY319897** (the "Property"), for all purposes allowed by the Motor Vehicle Lease Agreement and applicable law.  In further support of this Motion, Movant respectfully states:

1.  This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §157 and §1334 and 11 U.S.C. §362(d), and this matter is a core proceeding.

2.  A petition under Chapter 7 of the United States Bankruptcy Code was filed with respect to the Debtors on July 1, 2020.

3.  Upon information and belief, the Movant is the owner of a **2018 Toyota Yaris IA VIN 3MYDLBYV4JY319897** which has been leased to the Debtors pursuant to a valid Motor Vehicle Lease Agreement dated June 30, 2018.  A copy of the Motor Vehicle Lease Agreement and a copy of the evidence of Title establishing Movant's ownership interest are attached hereto as Exhibit A.

4.  Toyota Motor Credit Corporation is servicing agent for the Movant.

5.  As of July 24, 2020, the unpaid principal and interest balance due is $13,525.58 and the approximate outstanding amount of the Obligations less any partial payments or suspense balance is $13,538.34.

6.  The following chart sets forth the number and amount of payments due pursuant to the terms of the Motor Vehicle Lease Agreement as of July 24, 2020:

| Number of Payments | From | To | Monthly Payment Amount | Total Payments |
|---|---|---|---|---|
| 3 | 05/01/2020 | 07/01/2020 | $255.12 | $765.36 |
| Less partial payments: | | | | ($0.00) |
| | | | Total: | $765.36 |

7.  As of July 24, 2020, the total arrearage/delinquency is $778.12, consisting of (i) the foregoing total of payments in the amount of $765.36, plus (ii) the following fees:

| Fee Description | Amount |
|---|---|
| Late Charge | $12.76 |

8.  The estimated value of the Property is $12,075.00.  The basis for such valuation is: NADA, a copy of which is attached hereto as Exhibit B.

9.  Cause exists for relief from the automatic stay for the following reasons:

   i.  Movant's interest in the Property is not adequately protected.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1. Relief from the stay for all purposes allowed by applicable law and the Motor Vehicle Lease Agreement to enforce its remedies to obtain possession of the Property and any and all other collateral pledged under the Motor Vehicle Lease Agreement.

2. That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

3. For such other relief as the Court deems proper.

Dated: July 29, 2020

TOYOTA LEASE TRUST

By: **/s/JOHNIE R. MUNCY**
Eric D. White, Esquire, Bar No. 21346
Johnie R. Muncy, Esquire, Bar No. 73248
Nisha R. Patel, Esquire, Bar No. 83302
D. Carol Sasser, Esquire, Bar No. 28422
Samuel I. White, P.C.
1804 Staples Mill Road
Suite 200
Richmond, VA 23230
Tel.: (804) 290-4290
Fax: (804) 290-4298
jmuncy@siwpc.com

### CERTIFICATE OF SERVICE

I certify that on July 29, 2020, the foregoing Motion was served via CM/ECF on William A. Broscious, Trustee, and Richard C. Devor, Jr., Counsel for Debtors, at the email addresses registered with the Court, and that a true copy was mailed via first class mail, postage prepaid, to Rosina Guevara Monge and Javier Torres Romero, Debtors, 4407 E. Heritage Woods Court, Midlothian, VA 23112.

**/s/JOHNIE R. MUNCY**
Johnie R. Muncy, Esquire
Samuel I. White, P. C.

Johnie R. Muncy, Esquire
Counsel for Movant
Samuel I White, P.C.
Bar No. 73248
1804 Staples Mill Road
Suite 200
Richmond, VA 23230
(804) 290-4290
File No. 76734

# CLOSED END MOTOR VEHICLE LEASE AGREEMENT
## VIRGINIA

**TOYOTA FINANCIAL SERVICES**

Lease Date: 06/30/18

### 1. Parties

| LESSOR (DEALER) NAME AND ADDRESS | LESSEE AND CO-LESSEE NAME AND LESSEE'S BILLING ADDRESS | VEHICLE GARAGING ADDRESS, IF DIFFERENT THAN LESSEE'S BILLING ADDRESS |
|---|---|---|
| HALEY TOYOTA OF RICHMOND<br>3600 Lonas Pkwy<br>Midlothian, VA 23112 | JAVIER TORREZ ROMERO<br>4407 E HERITAGE WOODS CT<br>MIDLOTHIAN, VA 23112<br>COUNTY: CHESTERFIELD | COUNTY: |

This is a Lease for the Vehicle described below. The words "you", "your" and "yours" refer to the Lessee and any Co-Lessee. The words "we", "us" and "our" refer to the Lessor and, after assignment, to the Toyota Lease Trust ("TLT") and any subsequent assignee. Toyota Motor Credit Corporation ("TMCC") will be servicing this Lease on behalf of TLT. By signing this Lease, you agree to lease the Vehicle described below from us under the terms of this Lease, to pay all amounts due and to perform all of your obligations under this Lease.

### 2. Description of Leased Vehicle
You are leasing from us, and received in satisfactory condition, the following Vehicle:

| New, Used or Demo | Year | Make | Model | Body Style | Vehicle Identification No. | Odometer Mileage |
|---|---|---|---|---|---|---|
| NEW | 2018 | TOYOTA | YARIS i | MANUAL | 3MYDLBYV4JY319897 | 25 |

Primary Use: ☒ Personal, Family or Household  ☐ Business, Agricultural or Commercial

## FEDERAL CONSUMER LEASING ACT SEGREGATED DISCLOSURES

| 3. Amount Due at Lease Signing or Delivery | 4. Monthly Payments | 5. Other Charges (not part of your Monthly Payment) | 6. Total of Payments |
|---|---|---|---|
| (Itemized in Section 7 below)<br>$ 3,000.00 | Your first Monthly Payment of $ 255.12 is due on 06/30/18 followed by 35 payments of $ 255.12 due on the 1 of each month. The total of your Monthly Payments is $ 9,184.32 | Disposition fee (if you do not purchase the Vehicle) $ 350.00<br>Total $ 350.00 | (The amount you will have paid by the end of the Lease)<br>$ 12,279.20 |

### 7. Amount Due at Lease Signing or Delivery:
a. Capitalized Cost Reduction ................ $ 2,744.88
b. First Monthly Payment ....................... $ 255.12
c. Refundable Security Deposit .............. $ N/A
d. Title Fees ........................................... $ N/A
e. Registration Fees ............................... $ N/A
f. License Fees ...................................... $ N/A
g. Tax on Capitalized Cost Reduction ..... $ N/A
h. Acquisition Fee .................................. $ N/A
i. N/A ................................................... $ N/A
j. N/A ................................................... $ N/A
k. N/A ................................................... $ N/A
l. N/A ................................................... $ N/A
m. Total ................................................. $ 3,000.00

### 8. How the Amount Due at Lease Signing or Delivery will be Paid:
a. Net Trade-In Allowance
   Year N/A  Make N/A  Model N/A
   VIN N/A
   (i) Agreed Upon Value $ N/A
   (ii) Less: Pay Off $ N/A
   (iii) Less: Cash to Lessee $ N/A
   Net Trade In [(i) — (ii) — (iii), no less than 0] $ N/A
b. Rebates and Noncash Credits $ N/A
c. N/A $ N/A
d. N/A $ N/A
e. N/A $ N/A
f. Amount to be Paid in Cash $ 3,000.00
g. Total $ 3,000.00

### 9. Your Monthly Payment is determined as shown below:

9a. **Gross Capitalized Cost.** The agreed upon value of the Vehicle ($ 16,799.00) and any items you pay over the Lease Term (such as service contracts, insurance, and any outstanding prior credit or lease balance). For an itemization of this amount, see Section 13 .. $ 20,375.41
b. **Capitalized Cost Reduction.** The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost .................. − $ 2,744.88
c. **Adjusted Capitalized Cost.** The amount used in calculating your Base Monthly Payment = $ 17,630.53
d. **Residual Value.** The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment ..................... − $ 8,973.00

e. **Depreciation and any Amortized Amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term ............ = $ 8,657.53
f. **Rent Charge.** The amount charged in addition to the Depreciation and any Amortized Amounts + $ 526.79
g. **Total of Base Monthly Payments.** The Depreciation and any Amortized Amounts plus the Rent Charge ................................. = $ 9,184.32
h. **Lease Payments.** The number of payments in your Lease ........................................ 36
i. **Base Monthly Payment** ........................ = $ 255.12
j. **Monthly Sales/Use Tax** ........................ + $ N/A
k. N/A ................................................... + $ N/A
l. **Total Monthly Payment ("Monthly Payment")** = $ 255.12

**Early Termination.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

### 10. Excessive Wear and Use.
You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 36,000 miles over the odometer mileage disclosed above, at the rate of $ 0.15 per mile.

### 11. Purchase Option at End of Lease Term.
You have an option to purchase the Vehicle at the end of the Lease Term for $ 8,973.00. That amount does not include other charges you may be required to pay pursuant to Section 33.

### 12. Other Important Terms.
Review this Lease for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

## Gross Capitalized Cost Itemization and Other Items

### 13. Itemization of Gross Capitalized Cost
You will pay for the following items over the Lease Term, as part of your Monthly Payment:
a. Agreed Upon Value of the Vehicle ....... $ 16,799.00
b. Taxes ................................................. + 765.66
c. Initial Title, License and Registration Fees + 67.75
d. Optional Mechanical Breakdown Protection + N/A
e. Optional Maintenance Agreement ........ + N/A
f. Optional Credit Life and/or Disability Insurance + N/A
g. Optional Guaranteed Automobile Protection + 995.00
h. Optional Excess Wear and Use Protection Plan + N/A
i. Optional Tire and Wheel Protection Plan + 599.00
j. Outstanding Prior Credit or Lease Balance + N/A
k. Acquisition Fee ................................... + 650.00
l. DOC FEE .......................................... + 499.00
m. N/A ................................................... + N/A
n. N/A ................................................... + N/A
o. N/A ................................................... + N/A
p. **Gross Capitalized Cost** ...................... = 20,375.41

UNLESS WE MAKE A WRITTEN WARRANTY OR ENTER INTO A SERVICE CONTRACT WITHIN 90 DAYS FROM THE DATE OF THIS LEASE AND EXCEPT AS STATED IN THE PARAGRAPH IMMEDIATELY ABOVE, YOU ARE LEASING THIS VEHICLE "AS IS." THERE ARE NO WARRANTIES AS TO THE VEHICLE'S CONDITION, MERCHANTABILITY, SUITABILITY, OR FITNESS FOR A PARTICULAR PURPOSE.

### 19. Optional Insurance and Other Products
You are not required to buy any of the Optional Insurance or Other Products listed below to enter into this Lease, and they are not a factor in our credit decision. These insurance and other products will not be provided unless the appropriate box is checked, all information is filled in, you initial below, and you are accepted by the Provider. By your initials below, you agree that you have received a notice of the terms of the insurance or product, and you want to obtain the insurance or product for the premium or charge shown. A portion of the premium or charge shown may be retained by the Lessor (Dealer)

☐ Optional Credit Life Insurance $ N/A
   Beginning Coverage
   Insured(s)
   N/A $ N/A   N/A   N/A
   Provider  Premium  Lessee/Co-Lessee Initials

☐ Optional Credit Disability Insurance $ N/A
   Maximum Monthly Coverage
   Insured(s)
   N/A $ N/A   N/A   N/A
   Provider  Premium  Lessee/Co-Lessee Initials

☐ Optional Mechanical Breakdown Protection
   N/A miles/ N/A months Coverage
   N/A $ N/A   N/A   N/A
   Provider  Premium or Charge  Lessee/Co-Lessee Initials

☒ Optional Guaranteed Automobile Protection (see Section 32)
   TOYOTA EXTRA CARE GAP  $ 995.00  [initials]
   Provider  Premium or Charge  Lessee/Co-Lessee Initials

☐ Optional Maintenance Agreement
   N/A  $ N/A   N/A   N/A
   Provider  Premium or Charge  Lessee/Co-Lessee Initials

☐ Optional Excess Wear and Use Protection Plan
   N/A  $ N/A   N/A   N/A
   Provider  Premium or Charge  Lessee/Co-Lessee Initials

☒ Optional Tire and Wheel Protection Plan
   TOYOTA TIRE CARE  $ 599.00  [initials]  N/A
   Provider  Premium or Charge  Lessee/Co-Lessee Initials

Total Premiums and Charges  $ 1,594.00

### 14. Lease Term and Scheduled Maturity Date
The Lease Term of this Lease is 36 months, and the Scheduled Maturity Date of this Lease is 06/30/21.

### 15. Required Insurance
You must provide the following insurance during the Lease Term, with the Lessee and/or Co-Lessee as an insured driver. No other types of insurance are required and no **Required Insurance is provided by us in this Lease**.
a) primary automobile liability insurance with minimum limits for bodily injury or death of
   i) $ 25,000.00 any one person, and
   ii) $ 50,000.00 any one accident, and
   iii) $ 20,000.00 property damage; and
b) physical damage insurance for the full value of the Vehicle, with a maximum deductible of $1,000.
See Section 25 for additional information.
You have provided us today with the following insurance information:

Insurance Provider: National General  Policy No. 2001511291
By: Dealer Employee
Agent's Name / Address: SSB Insurance 435029-2018  Agent's Phone No. 1-888-672-6999
Servisido LA 92143

### 16. Charges for Late/Returned Payments
If we do not receive a full Monthly Payment within 10 days after it is due, you must pay a late payment charge of 5% of the unpaid amount or $10, whichever is greater.
If any payment (including an electronic funds transfer) you make to us is not honored or returned to us for any reason, in addition to any late charges, you may be charged a fee of $25, as permitted by law.

### 17. Estimated Official Fees and Taxes  $ 1,413.31
This is an estimate of the total amount you will pay over the Lease Term for official and license fees, registration, title, and taxes (including personal property taxes), whether included in your Total Monthly Payment (Section 9.l), the Amount Due at Lease Signing or Delivery (Section 7) or billed separately. The actual total of Official Fees and Taxes may be higher or lower than this estimate depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed. This estimate is based on your current address and may increase if you move or, if tax rates change. **You are responsible for paying any increases.** See Section 28 for additional information.

### 18. Warranty
If the Vehicle is a new or a demo Vehicle, the Vehicle is subject to the standard new warranty from the manufacturer. If the Vehicle is used, it is not covered by a warranty unless identified below.
☐ Remainder of standard new vehicle warranty from manufacturer
☐ Used vehicle warranty from manufacturer

### 20. Complete Agreement or Modification
By your initials, you acknowledge that this Lease contains the entire agreement for the Lease of this Vehicle. There are no other agreements. Any change to this Lease must be in writing, and signed by you and by us.  [initials]
Lessee/Co-Lessee Initials

### 21. Agreement to Arbitrate
By checking the "opt-in" box and initialing below, you agree that at the request of either you or us any controversy or claim between you and us shall be determined by neutral binding arbitration under the Federal Arbitration Act. See the Arbitration Provision in Section 48 for definitions, terms and conditions. IF YOU DO NOT WISH TO BE BOUND BY THE ARBITRATION PROVISION, CHECK THE "OPT-OUT" BOX AND INITIAL BELOW. By checking a box and initialing below, you agree that you have read and received the Arbitration Provision.

☐ OPT IN: You agree to be bound by the Arbitration Provision
☐ OPT OUT: You do not wish to be bound by the Arbitration Provision
[initials]
Lessee/Co-Lessee Initials

## Lease Signatures and Notices

### PLEASE READ ALL PAGES FOR ADDITIONAL TERMS AND CONDITIONS
NOTICE TO LESSEE AND CO-LESSEE: (1) DO NOT SIGN THIS LEASE BEFORE YOU READ ALL PAGES OR IF THIS LEASE CONTAINS ANY BLANK SPACES; (2) YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS LEASE WHEN YOU SIGN IT.
By signing below, you acknowledge that: (1) You have read the entire Lease, including all pages; (2) You agree to all of the provisions of this Lease; (3) You have received a completely filled in copy of this Lease; and (4) This is a lease; you have no ownership interest in the Vehicle unless and until you exercise your option to purchase set forth in this Lease.

Lessee Signature: [signature]  Co-Lessee Signature: N/A

**Notice Regarding Assignment:** As part of a like-kind exchange program, TMCC has engaged TQI Exchange, LLC ("TQI") as a qualified intermediary. Lessor is hereby notified that TMCC has assigned to TQI its rights (but not its obligations) in agreements to acquire the Vehicle.
**Acceptance and Assignment:** The Lessor hereby accepts this Lease and assigns to the Toyota Lease Trust all rights, title and interest in this Lease and in the Vehicle, and Lessor's rights under any guaranty executed in connection with this Lease, with full powers to Toyota Lease Trust to collect and discharge all obligations related to this Lease, any guaranty, and this assignment.

Lessor: HALEY TOYOTA OF RICHMOND  By: [signature]  Title: FM  Date: 06/30/18

Page 1 of 3
TMCC COPY

*Represents Redacted Information*

## YOUR OBLIGATIONS DURING THIS LEASE

**22. Vehicle Maintenance and Damage.** You are responsible for all maintenance, repair, service and operating expenses of the Vehicle. You agree to keep the Vehicle in the same condition as when you received it, except for reasonable wear, to maintain the Vehicle so that any warranties or similar agreements remain effective and so that it passes all inspections required by law, to follow the owner's manual and maintenance schedule, and to provide us with written proof of such maintenance. You agree to make the Vehicle available to us for inspection during the Lease Term at any reasonable time and place that we request.

**23. Prohibited Uses of the Vehicle.** You agree that you will not, nor permit others to:
a. use the Vehicle in any illegal manner, in violation of your insurance policy, or without the insurance coverage described in Sections 15 and 25;
b. alter or install any equipment on or in the Vehicle without our written consent. Any accessions to the Vehicle become our property;
c. subject the Vehicle to any lien, seizure or other involuntary transfer;
d. use the Vehicle to transport goods or people for hire;
e. remove the Vehicle from the state where it was first titled, for more than 30 days, without our written consent;
f. take the Vehicle outside the continental United States (except to Canada or Mexico for less than 30 days, if you have our consent and have provided us with proof of insurance);
g. use the Vehicle in a way that causes the cancellation or suspension of any warranty or other similar protection agreement; or
h. allow anyone else to regularly use the Vehicle without our written consent.

**Assigning, subleasing, pledging or permitting a security interest to be created in, or in any other way transferring by you of any interest in the Vehicle or this Lease is strictly prohibited.**

**24. Title and Registration.** Legal title to the Vehicle will be in our name and the Vehicle will be registered as we direct. You must promptly pay all title, registration and license fees.

**25. Required Insurance.** The limits required under state law may not be sufficient for your needs. See your insurance provider for more information. You may obtain the required coverages through any insurance company, agent, or broker you choose which is reasonably acceptable to us and authorized to do business in the state where the Vehicle is located. This insurance may be provided through existing policies that you own or control if it otherwise meets all requirements. The insurance policy must be acceptable to us, name Toyota Lease Trust as additional insured and loss payee, and give us at least 10 days written notice before any cancellation or reduction in coverage. You authorize us to endorse your name(s) on any check or draft from your insurance company for any claim. You must provide us with written proof of this insurance, including a copy of the insurance policy, at any time during the term of this Lease at our request. You agree to release to us all insurance or other proceeds you receive for damages or loss to the Vehicle (including any premium refunds on the Required Insurance) up to the amount you owe us.

**Notice: Liability insurance coverage for bodily injury and property damage caused to others is not included in this Lease.**

**26. Payment Obligations.** You may not change or stop your Monthly Payments for any reason, even if the Vehicle is stolen, destroyed, seized by the government, non-operable, experiences any mechanical problem, or does not perform satisfactorily. We may apply each Monthly Payment and each other payment we receive to past due payments, current payment due, late charges, and other amounts due under this Lease in any order we choose, to the extent permitted by law.

**27. Change in Address.** You must notify us in writing within 30 days of any change in your address or the address where the Vehicle is garaged.

**28. Fees, Taxes and Fines.** You will comply with all official fees and taxes related to the Vehicle and this Lease, including title, license and registration fees, and sales, use, excise and personal property taxes. These amounts may change from time to time based on changes to your address and changes in tax rates. You must also promptly pay all other fees, assessments, charges, costs and fines (collectively "fines") incurred on the Vehicle such as traffic tickets, impounds, towing charges, storage charges and toll violations. Some bills for official fees and taxes may be sent to you for payment. Other bills may be paid by us on your behalf and we will charge you the amount billed to us. If you fail to pay any such amount when billed by us or by a third party, and we elect to pay it, you will reimburse us for the amount paid plus a $10 administrative fee per incident, to the extent permitted by law. In connection with these bills, you give us permission to provide information regarding you and this Lease to the billing authority. You must pay all fees, taxes, assessments, charges, costs and fines incurred on the Vehicle during this Lease Term, even if they are assessed and billed after this Lease has ended. We may charge you an estimated amount for any remaining items at the time this Lease ends. You are responsible for any shortage in this estimate, and we will refund you any excess.

We are not obligated to apply for any refund or abatement of official fees and taxes, including personal property taxes. If you make a written request that we apply for a refund of an official fee or tax that you paid to us, to which you are entitled, we will file an application for refund. We will send any refund we receive, less all amounts due under this Lease, to you.

We may pay any title, registration, license fee, tax, assessment, charge, cost or fine which you fail to pay, and charge you the amount paid. You are responsible for any fines or penalties if you fail to pay the bill when due.

**29. Default and Remedies.** To the extent permitted by law, you will be in default if:
a. you fail to make any payment when it is due;
b. you fail to keep any other agreement in this Lease;
c. you provided false or misleading information when applying for this Lease;
d. you become the subject of a bankruptcy or insolvency proceeding;
e. the Vehicle is lost, stolen, seized, confiscated, levied upon, or damaged beyond reasonable repair;
f. you die and there is no surviving co-lessee; or
g. you fail to return the Vehicle by the Scheduled Maturity Date and do not obtain our written consent to extend the Lease Term.

If you are in default, we may do any or all of the following, as permitted by law, after giving any legally required notices, and observing any legally required cure or reinstatement periods:
i. terminate this Lease and your right to use the Vehicle;
ii. require you to return the Vehicle by allowing us to pick up the Vehicle or making it available to us at any reasonable time and place we specify;
iii. take possession of the Vehicle by legal process or by self help in any manner not prohibited by law;
iv. require you to pay the amounts set forth in Section 30;
v. take any reasonable action to correct your default or to prevent our loss;
vi. pursue any other remedy allowed by law; and
vii. require you to pay all of our expenses for taking these actions and add the amount of our expenses to the amount you owe us under this Lease, including, but not limited to, expenses for repossession, transportation, storage, collection, and legal costs, including reasonable attorneys' fees paid to an attorney who is not our salaried employee, as allowed by applicable law.

We or our agent may take possession of personal property left in or on the Vehicle, subject to your right to recover such property. If any. We or our agent may store it for you and you will be responsible to pay for this service. If you do not take possession of the personal property, we or our agent may dispose of it as permitted by law.

## ENDING YOUR LEASE

**30. Early Termination by Us.** We may terminate this Lease at any time if you are in default (see Section 29). If we do, you must return the Vehicle to us, at any reasonable location we specify. In addition, you must pay us, upon demand, the amounts set forth in Section 29(vii) and the total of the following amounts:
a. all Monthly Payments that have become due and are unpaid at termination; plus
b. all official fees and taxes charged in connection with this Lease termination; plus
c. all out of pocket costs paid by us for the sale of the Vehicle, including costs for transporting, storing, preparing for sale, and auctioning the Vehicle; plus
d. the amount, if any, by which the "Adjusted Lease Balance" exceeds the "Fair Market Value" (as such terms are defined below); plus
e. all other amounts then due under this Lease, but not including charges for Excessive Wear and Use and excess mileage (Sections 10 and 35); minus
f. any remaining Refundable Security Deposit (Section 37) or refund we receive from Optional Insurance or Other Products (Section 39).

The "Adjusted Lease Balance" is calculated by adding the Base Monthly Payments whose scheduled due dates are after the date of termination and the Residual Value, then subtracting the unearned portion of the Rent Charge. The unearned portion of the Rent Charge is calculated according to the "constant yield" method.

The "Fair Market Value," if not established by agreement or appraisal as described below, is equal to the price we receive when we dispose of the Vehicle at wholesale. The Fair Market Value may also be determined by our mutual agreement or by an appraisal of the wholesale value of the Vehicle, which you may obtain, at your own expense, from a professional independent appraiser agreed to by us. If you obtain such an appraisal and the appraisal is provided to us within 10 days after the Vehicle is returned to us, the appraised value will be final and binding on both you and us and will be used as the Fair Market Value. If the Vehicle is subject to damage or theft resulting in a total loss, in each case as we determine, the Fair Market Value will equal the amount of any insurance proceeds we receive from your Required Insurance. If there are no insurance proceeds the Fair Market Value will be zero.

**31. Early Termination by You.** If you are not in default, you may terminate this Lease at any time prior to the end of this Lease.

If you terminate this Lease early and do not elect to purchase the Vehicle in accordance with Section 33, you must return the Vehicle to us, at any reasonable location we specify, and you must pay us, upon demand, either the total of the following amounts due under Section 30 or the total of the following amounts, whichever is less:
a. all Monthly Payments that have become due and are unpaid at termination; plus
b. all remaining Monthly Payments from the date of termination to the scheduled end of this Lease, unless Section 32 is applicable to this Lease; plus
c. all official fees and taxes charged in connection with this Lease termination; plus
d. all out of pocket costs paid by us for the sale of the Vehicle, including costs for transporting, storing, preparing for sale, and auctioning the Vehicle; plus
e. all other amounts then due under this Lease, including all charges for Excessive Wear and Use and excess mileage (Sections 10 and 35); minus
f. any remaining Refundable Security Deposit (Section 37), or refund we receive from Optional Insurance or Other Products (Section 39).

**32. Effect of Guaranteed Automobile Protection on Early Termination.** If the Vehicle is subject to damage or theft resulting in a total loss, and you have purchased and received Guaranteed Automobile Protection in connection with this Lease, and you have met the conditions set forth in the Guaranteed Automobile Protection agreement, then your Early Termination obligations set forth in Sections 30 or 31, as applicable, will not include the charges set forth in Section 30(d), the disposition fee shown in Section 5, and the charges for Excessive Wear and Use and excess mileage (Sections 10 and 35).

**33. Your Option to Purchase the Vehicle.** You may purchase the Vehicle at any time during this Lease or at the Scheduled Maturity Date (unless a governmental agency has seized the Vehicle and instructed us not to release the Vehicle to you). The price to purchase the Vehicle at the Scheduled Maturity Date is the Purchase Option Price shown in Section 11, plus the amount described in subsections 33(a), 33(b) and 33(c), below. The price to purchase the Vehicle during the Lease Term is the total of:
a. all unpaid Monthly Payments that have become due, and other amounts due and unpaid under this Lease, except the disposition fee shown in Section 5 and charges for Excessive Wear and Use and excess mileage (Sections 10 and 35); plus
b. all official fees and taxes, and documentary fees charged in connection with the purchase; plus
c. all amounts necessary to meet any legal selling requirements; plus
d. the Adjusted Lease Balance as defined in Section 30.

As part of a like-kind exchange program, TMCC has engaged TQI Exchange, LLC ("TQI") as a qualified intermediary. Lessor and Lessee are hereby notified that TMCC has assigned to TQI its rights (but not its obligations) in any agreement for the sale of the Vehicle at Lease termination.

**34. Obligations If You Do Not Purchase the Vehicle at the Scheduled Maturity Date.** At the Scheduled Maturity Date, you must return the Vehicle to us at any reasonable location we specify, and pay us, upon demand, the following amounts:
a. all Monthly Payments and other amounts due under this Lease, including the disposition fee shown in Section 5; plus
b. all official fees and taxes charged in connection with this Lease termination; plus
c. all Excessive Wear and Use charges described in Section 35; plus
d. all excess mileage charges disclosed in Section 10. You will not receive a refund if you do not use all of the mileage set forth in Section 10.

If you keep possession of the Vehicle past the Scheduled Maturity Date, you agree to continue to pay the Monthly Payments. However, continued payment does not cure any default, including a default under Section 29(g), and does not permit you to keep the Vehicle unless you obtain our advance written consent to extend the Lease Term. You agree to pay us any damages we suffer because you failed to return the Vehicle at the end of this Lease.

**35. Excessive Wear and Use Charges.** If you do not purchase the Vehicle at any time during this Lease or at the Scheduled Maturity Date, or if you elect to terminate this Lease pursuant to the terms of this Lease and except to the extent paid by the Excess Wear and Use Protection Plan, if you purchased and received that Plan, you are responsible for the estimated cost to repair damage (including diagnostic cost, if any) to the Vehicle which is excessive wear and use (even if we do not repair the Vehicle).

Excessive wear and use may include but is not limited to certain damage such as:
a. inoperative mechanical and electrical parts;
b. damage (including but not limited to, damage to the engine) due to your failure to maintain the Vehicle pursuant to the terms of this Lease;
c. damage to the body, lights, trim or paint;
d. damaged, broken or missing glass;
e. torn, damaged or stained interior;
f. damage from flood, water, hail or sand;
g. damage from removal of equipment or signs placed on the Vehicle;
h. missing equipment, parts and accessories, including missing keys or remote entry devices; or
i. any wear or damage to any part of the tire that doesn't allow the tire to meet the manufacturer's guidelines for safe operation, or any mismatched tire sizes in a set of 5 (or 4 with any emergency spare in the Vehicle was equipped with one).

## ADDITIONAL INFORMATION

**36. Communication Consent.** You agree that we, TMCC and any affiliates, agents and service providers or any assignees of the foregoing (individually and collectively, as applicable in this Communications Consent section, "we," "our" or "us") may call you, leave you a voice, prerecorded or artificial voice message or send you a text, email or other electronic message for any purpose related to your Accounts with us, our products and services, or surveys or research (each a "Communication"). We may include your personal information in a Communication and conduct a Communication using an automated dialing system and any contact information we have for you, including a cell phone number. We will not charge you for a Communication but your service provider may do so. You understand and agree, we may always communicate with you in any manner permissible by law that does not require your consent.

**37. Refundable Security Deposit.** Your security deposit may be used by us to pay amounts that you owe under this Lease. If you elect to purchase your Vehicle, your security deposit may be applied by us to the amount you owe to purchase your Vehicle. Any unused security deposit will be returned to you at the end of the Lease Term. No interest, increase or profits will be paid to you on the security deposit, unless required by law.

**38. Assignment.** We can assign our interest in this Lease and in the Vehicle without your consent. After you sign this Lease, we will assign it to TLT and you agree to make all payments to TMCC, as servicer for TLT.

**39. Refund of Optional Insurance or Other Products.** If any optional insurance or product included in the Gross Capitalized Cost is cancelled before the end of the Lease Term, or if you are not accepted by the Provider for a requested optional insurance or product, we will credit any refunds to your account.

**40. Indemnity.** You agree to indemnify us from, and to pay on our behalf, any claim or loss (including damages, costs, expenses and legal fees) which arise from or is related to the possession, condition, use, maintenance or operation of the Vehicle. Any insurance we provide is secondary to the Required Insurance.

**41. Credit Information.** You authorize us, at any time, to investigate any information provided on your credit application in order to establish, maintain and collect on this Lease account, including to order one or more credit reports in connection with establishing, maintaining or collecting this Lease account. You authorize us to provide information concerning your account to credit reporting agencies and others who may lawfully receive such information. You may notify us if you believe that we have reported any inaccurate information

about your Lease account to a consumer reporting agency. Send your written notice describing the specific inaccuracies to us at the following address: P.O. Box 8786, Cedar Rapids, IA 52409-8786.

**42. Liability.** Lessee and Co-Lessee are jointly and severally liable. If there are both a Lessee and Co-Lessee signing this Lease, we can release, waive or delay the enforcement of our rights against one of you, without affecting our rights as to the other one(s).

**43. Notices.** All Lessee and Co-Lessee correspondence and notices will be sent to the Lessee's Billing Address shown on this Lease, unless you give us a different address. All correspondence and notices will be given solely in TMCC's name as servicer and will be given on behalf of TLT.

**44. Choice of Law and Severability.** You agree that the law of the state in which this Lease is signed applies to this Lease unless prohibited by law. If certain provisions of this Lease violate the law, those provisions will be void, and the rest of this Lease will be enforceable.

**45. No Waiver by Us.** If we delay or refrain from exercising our rights or remedies under this Lease, we do not lose those rights or remedies. If we accept late or partial payments from you, we do not waive our right to receive full and timely payments. We may accept payments with "Payment in Full," similar language or other restrictive endorsements without being bound by such language or waiving our rights or remedies.

**46. Odometer Disclosure Statement.** Federal law requires that you disclose the Vehicle's odometer reading to us upon termination of this Lease or transfer of ownership. Failure to complete an Odometer Disclosure Statement, failure to return it to us, or making a false statement therein, may result in fines and/or imprisonment. You will be provided an Odometer Disclosure Statement to complete prior to the termination of this Lease.

**47. True Lease; Security Interest.** You and we intend that this Lease for all purposes constitutes a "true lease" of the Vehicle and not a "financed lease" or a secured transaction under the laws of any state. However, if for some reason a court or arbitrator determines that this Lease constitutes a "financed lease" or a secured transaction, you grant us a security interest at that time, to the extent permitted by law, in the Vehicle including any property now or later installed in or affixed to the Vehicle, in all proceeds derived from the Vehicle, in your security deposit, in the proceeds of any insurance relating to persons or property and the proceeds of all Guaranteed Automobile Protection and other optional products, including return of unearned premiums and unearned charges.

## ARBITRATION PROVISION

48. **Arbitration Provision.** You agree that any claims arising from or relating to this Lease or related agreements or relationships, including the validity, enforceability, arbitrability or scope of this Provision, at your or our election, are subject to arbitration. This includes, without limitation, claims in contract, tort, pursuant to statute, regulation, ordinance or in equity or otherwise, and claims asserted by us against you and by you against us, and the following Covered Parties: Toyota Lease Trust, Toyota Motor Credit Corporation, Lexus Financial Services, Toyota Motor Insurance Services, Inc., and/or any of our or its affiliates and/or any of our or their employees, officers, successors, assigns or against any third party providing any product or service in connection with this Lease. Any arbitration shall be administered by either JAMS (its rules may be obtained at any of its many offices nationwide or online at www.jamsadr.com), or any arbitration provider that either party may choose subject to the other's approval, which may not be unreasonably withheld. The applicable rules of the selected arbitration provider shall govern, except that in the event of any inconsistency between those rules and this Provision, this Provision shall prevail. Such claims shall be resolved in accordance with (i) the Federal Arbitration Act (the "FAA"), (ii) the selected arbitration provider's rules and procedures in effect at the time the claim is filed; and (iii) this Provision. Any arbitration hearing at which you appear shall be conducted at a location that is reasonably convenient to where you live. The Arbitrator shall apply applicable substantive law consistent with the FAA (and not any state law concerning arbitration) and shall award such remedies, if any, that would be available in court if arbitration had not been elected. If you cannot afford to pay and cannot obtain a waiver of the fees charged by the Arbitrator or if you believe that such fees are or will be prohibitively expensive or excessive, we and the Covered Parties will entertain in good faith any reasonable written request by you for us and the Covered Parties to pay or reimburse you for all or part of such fees. In addition, we will pay the selected arbitration provider's fees for all claims under $15,000. For claims above that amount, the selected arbitration provider's fee shall be covered equally by the parties. In the event we prevail, we agree not to seek recovery of our attorneys' fees from you. If you prevail and the Arbitrator awards you an amount higher than our last written settlement offer before the Arbitrator was selected, we will pay you double your attorney's fees and the maximum claim that may be brought in small claims court in the county of your billing address. **We, the Covered Parties and you are prohibited from participating in any type of representative action, including a class action or private attorney general action. We, the Covered Parties and you are also prohibited from seeking any relief on a representative or class basis.** You will not be subject to this Provision for any individual claim brought by you in small claims court or your state's equivalent court, unless such claim is transferred, removed or appealed to a different court. IF ANY PARTY ELECTS ARBITRATION WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE NOR ANY COVERED PARTY WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT, TO HAVE A JURY TRIAL ON THAT CLAIM; OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO SUCH CLAIM. THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING EXCEPT AS MAY BE PROVIDED IN THE FAA. This Provision will survive your full payment of this Lease; our sale or transfer of this Lease; any repossession of the Vehicle; and your (or our) bankruptcy.

# APPLICATION FOR CERTIFICATE OF TITLE AND REGISTRATION

**dmv**
www.dmvNow.com
Virginia Department of Motor Vehicles
Post Office Box 27412
Richmond, Virginia 23269-0001

**PURPOSE:** Use this form to apply for a title and/or to register a passenger vehicle, motorcycle, truck, motor home (RV), or trailer.
**INSTRUCTIONS:** Complete this form and return to any DMV customer service center (CSC). DMV may request proof of any information provided.

## OWNER INFORMATION

**APPLICATION TYPE:** Check one:
- [ ] Title
- [X] Title and Registration (license plates issued)

**Electronic Title Option** — I want DMV to maintain an electronic certificate of title on file for this vehicle. (No paper title will be issued) [ ] YES [X] NO

**Check one:**
- [ ] Vehicle is owned by individual(s).
- [X] Vehicle is business owned.

If this application is for joint ownership, do you wish clear rights of ownership to be transferred to the surviving owner in the event of the death of either the owner or co-owner? [ ] YES [ ] NO

| Field | Value |
|---|---|
| OWNER'S FULL LEGAL NAME / BUSINESS NAME | TOYOTA LEASE TRUST |
| TELEPHONE NUMBER | |
| DMV CUSTOMER NUMBER / FEIN / SSN | [REDACTED] |
| CO-OWNER'S FULL LEGAL NAME | |

**NOTE:** Owners (and Lessees if applicable) MUST provide their residence/home/business address where requested, this address can not be a P.O. Box. You must complete form ISD-01 if you would like your address(es) updated.

**RESIDENCE/BUSINESS JURISDICTION**

| Field | Address | City | State | Zip Code |
|---|---|---|---|---|
| OWNER'S STREET ADDRESS | PO BOX 105386 | ATLANTA | GA | 303485386 |
| OWNER'S MAILING ADDRESS | C/O JAVIER TORREZ ROMERO 4407 E HERITAGE WOODS | MIDLOTHIAN | VA | 23112-4759 |
| CO-OWNER'S STREET ADDRESS | | | | |
| CO-OWNER'S MAILING ADDRESS | | | | |

**LOCATION WHERE VEHICLE IS PRINCIPALLY GARAGED:** [ ] CITY [ ] COUNTY [ ] TOWN OF CHESTERFIELD

Are any of the owners/lessees on active military duty or service? [ ] YES [ ] NO

IF YOU WOULD LIKE YOUR REGISTRATION RENEWALS SENT TO AN ADDRESS OTHER THAN YOUR RESIDENCE/BUSINESS ADDRESS, ENTER IT BELOW.
**REGISTRATION MAILING ADDRESS - OPTIONAL**

## VEHICLE INFORMATION

| YEAR | MAKE | MODEL | BODY TYPE | VIN | NUMBER OF AXLES |
|---|---|---|---|---|---|
| 2018 | TOYOTA | YARIS IA | 4D SDN | 3MYDLBYV4JY319897 | 2 |

| EMPTY WEIGHT | GVWR | GROSS WEIGHT | GCWR |
|---|---|---|---|
| 2385 | | | |

**FUEL TYPE:** [X] GAS  [ ] DIESEL  [ ] ELECTRIC  [ ] OTHER  OTHER FUEL TYPE: ___
**VEHICLE COLOR:** DBL  PRIMARY
**IS THIS A LOW SPEED VEHICLE?** [ ] YES [X] NO
**IS THIS A LOGGING VEHICLE?** [ ] YES [ ] NO
**IS VEHICLE STATE OR LOCALITY-OWNED?** [ ] YES - enter agency code  [ ] NO
**DIVISION CODE:**   **PREVIOUS TITLE NUMBER:**   **STATE:**

## LIEN INFORMATION

**IS THERE A LIEN ON THIS VEHICLE?** [ ] YES - YOU MUST COMPLETE THIS SECTION  [X] NO - SKIP TO THE NEXT SECTION

| DATE OF FIRST LIEN | LIENHOLDER NAME | LIENHOLDER CODE |
|---|---|---|
| | | |

| LIENHOLDER MAILING ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | | |

For additional liens, complete VSA 66 and attach to this form.

## SOURCE OF OWNERSHIP INFORMATION

**HOW WAS THIS VEHICLE SOLD TO YOU?** (check one) [ ] USED [X] NEW [ ] DEMONSTRATOR
**PURCHASE DATE:** 6/30/2018
**RENTOR NUMBER:**
**VA DEALER LICENSE NUMBER:** [REDACTED] (DEALERS ONLY)

| SALES PRICE | PROCESSING FEE | SALES AND USE TAX | VEHICLE PURCHASED FROM | MANUFACTURER REBATE/INCENTIVE |
|---|---|---|---|---|
| 16500.00 | 499.00 | 705.46 | HALEY TOYOTA OF RICHMOND | |

| STREET ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 3600 LONAS PARKWAY | MIDLOTHIAN | VA | 23112 |

## LEASE INFORMATION (If applicable)

| LESSEE'S FULL LEGAL NAME | TELEPHONE NUMBER | DMV CUSTOMER NUMBER / FEIN / SSN |
|---|---|---|
| TORREZ ROMERO, JAVIER | | [REDACTED] |

| LESSEE'S RESIDENCE/BUSINESS ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 4407 E HERITAGE WOODS CT | MIDLOTHIAN | VA | 231124759 |

## ODOMETER STATEMENT

**ODOMETER READING (no tenths):** 25

Federal and state laws require that you state the mileage in connection with the transfer of ownership. Failure to complete the statement or providing a false statement may result in fines and/or imprisonment.

I certify to the best of my knowledge that: (check one)
- [X] The odometer reading above is the ACTUAL MILEAGE of the vehicle.
- [ ] The odometer reading above is NOT the ACTUAL MILEAGE. (Odometer discrepancy.)
- [ ] The odometer reading above is IN EXCESS of its mechanical limits.
- [ ] The model year is at least 10 years or older than the current calendar year and was exempt from odometer disclosure in the prior state of title. (Applicant must present the out-of-state title showing the exemption)

Represents Redacted Information

## PERSONAL PROPERTY TAX RELIEF ELIGIBILITY

1. Answer the questions below to determine if your vehicle qualifies for car tax relief.    YES   NO
   a. Is more than 50% of the vehicle's annual mileage used as a business expense for federal income tax purposes OR reimbursed by an employer? ☐ ☐
   b. Is more than 50% of the depreciation associated with the vehicle deducted as a business expense for federal income tax purposes? ☐ ☐
   c. Is the cost of the vehicle expensed pursuant to Section 179 of the Internal Revenue Service Code? ☐ ☐
   d. If the vehicle is leased by an individual, does the leasing company pay the tax without reimbursement from the individual? ☐ ☐
2. If you answered YES to ANY of the above questions, check Business Use. Your vehicle is considered by State law to have a business use and does NOT qualify for Personal Property Tax Relief.   ☐ BUSINESS USE
3. If you answered NO to ALL of the above questions, check Personal Use and answer the question below.
   ☒ PERSONAL USE -- Is this vehicle held in a private trust for non-business purposes by an individual beneficiary?   ☐ YES ☐ NO

## INSURANCE CERTIFICATION

I/We certify that (check one):
☐ This vehicle is insured by a liability policy issued through an insurance company licensed to do business in Virginia and it will remain insured while registered, whether or not it is operated. Penalties are severe for violation of this requirement. Be advised that the amount of liability coverage required is higher for vehicles that are operated for hire.

☐ This vehicle is not insured; therefore, I am remitting the applicable uninsured motor vehicle fee. (This fee provides no insurance coverage.) A vehicle must be insured with liability coverage when it is registered, and it must remain insured while registered, whether or not it is operated, or the uninsured motor vehicle fee must be paid. Penalties are severe for violation of this requirement.

## REGISTRATION INFORMATION

NOTE: Virginia offers more than 200 unique plates for our customers. Please visit www.dmvNow.com for a listing of special plates available. Not all plates are available for all vehicle types and some special plates require a certification form. Review our website for additional information.

REGISTRATION PERIOD (check one:)   ☒ ONE YEAR                              ☐ TWO YEARS ($2 discount)
                                    ☐ THREE YEARS ($3 discount - not for emissions area)   ☐ TRANSFER _____ (enter plate number)
REGISTRATION TYPE (check one:)      ☒ PRIVATE        ☐ RENTAL              ☐ FOR HIRE (complete For Hire Information below)
☐ Trailer Permanent - (one time fee) select size:   ☐ Regular size plate    ☐ Small size plate (trailer gross weight must be 4,000 lbs or less)

## FOR HIRE INFORMATION

Check to indicate how the vehicle being registered will be used (check all that apply). If the vehicle will be used in **property carrier operations**, and those operations exclusively use passenger cars, motorcycles, autocycles, mopeds, or vehicles with a gross vehicle weight rating (GVWR) of 10,000 pounds or less, then registration for hire is not required.

— PASSENGER CARRIER OPERATIONS —
☐ Common Carrier - Regular Route    ☐ Employee Hauler           ☐ Sight-seeing Carrier
☐ Common Carrier - Irregular Route  ☐ Contract Passenger Carrier ☐ Non-Emergency Medical Transport
☐ Nonprofit/Tax-Exempt              ☐ Taxicab                    ☐ Exempt Operations - Passengers *

— PROPERTY CARRIER OPERATIONS —
☐ Property Carrier *
☐ Household Goods Carrier *
☐ Exempt Operations - Property *

* You must also complete the For-Hire Vehicles Registration Request (MCS115)

Do you hold a valid intrastate operating authority certificate/permit?   ☐ YES ☐ NO
If no, and you are a passenger carrier you must also complete the For-Hire Vehicles Registration Request (MCS115).

## NOTICE

**PRIVACY NOTICE:** The information, including Social Security Number, is requested in accordance with Virginia Code §§46.2-623 and 46.2-629. Any person who refuses to supply the required information will be denied a certificate of title and/or registration. By signing this form, you authorize DMV's exchange of title and registration records with business, law enforcement, or government entities and you authorize DMV's exchange of title and registration records in accordance with Va. Code §§46.2-208 through 46.2-214 and 18 U.S.C. 2721.

**POWER OF ATTORNEY FOR NON-RESIDENT(S) AND CORPORATION(S) NOT DOMICILED IN VIRGINIA:** Pursuant to the provisions of Virginia Code §46.2-601, I/we appoint the Commissioner of the Department of Motor Vehicles of the Commonwealth of Virginia, to be my/our true and legal agent upon whom all legal processes against me/us may be served in any legal proceeding arising from the operation and/or use of any motor vehicle registered in my/our name(s) in the Commonwealth of Virginia. I/we agree that any lawful process or notice to me/us which is served on the Commissioner shall have the same legal effect as if served on me/us within the Commonwealth of Virginia.

## CERTIFICATION

I/We certify and affirm that all information presented in this form is true and correct, that any documents I/we have presented to DMV are genuine, and that the information included in all supporting documentation is true and accurate. I/We make this certification and affirmation under penalty of perjury and I/we understand that knowingly making a false statement or representation on this form is a criminal violation.

| APPLICANT NAME (print) | SIGNATURE OF APPLICANT | DATE (mm/dd/yyyy) |
|---|---|---|
| TOYOTA LEASE TRUST | TLT By Greg Campbell | 6/30/2018 |
| CO-APPLICANT NAME (print) | SIGNATURE OF CO-APPLICANT | DATE (mm/dd/yyyy) |

## DMV USE ONLY

PROOF OF ADDRESS (specify proof document(s) presented):                         WITH LIEN? ☐ YES ☒ NO    UMV FEE $
SALES PRICE  $ 16500.00       TITLE FEE $ 0.00        IF HELD, REASON           CSR STAMP 286-
PROCESSING FEE $ 499.00       TRANSFER FEE $ 0.00                                HALEY TOYOTA OF RICHMOND
SALES & USE TAX $ 705.46      REGISTRATION FEE $ 40.75    TOTAL $ 756.21

## NADA Used Cars/Trucks

NADA User Car Guide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report.



| | | | |
|---|---|---|---|
| **Period:** | July 24, 2020 | **Region:** | Virginia |
| **VIN:** | 3MYDLBYV4JY319897 | **Ref. Number:** | |

### 2018 Toyota Yaris iA Sedan 4D 1.5L I4

| | | | | | |
|---|---|---|---|---|---|
| **Mileage:** | 37,500 | **Adjustment:** | $0 | **Base MSRP:** | $15,950 |
| **Weight:** | 2,385 | | | | |

## NADA Used Cars/Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Weekly Rough Trade-In | $9,075 | N/A | N/A | $9,075 |
| Weekly Average Trade-In | $10,150 | N/A | N/A | $10,150 |
| Weekly Clean Trade-In | $11,000 | N/A | N/A | $11,000 |
| Weekly Clean Loan | $9,900 | N/A | N/A | $9,900 |
| Weekly Clean Retail | $12,925 | N/A | N/A | $12,925 |
| Weekly Low Auction | N/A | N/A | N/A | N/A |
| Weekly Average Auction | N/A | N/A | N/A | N/A |
| Weekly High Auction | N/A | N/A | N/A | N/A |
| Monthly Rough Trade-In | $8,300 | N/A | N/A | $8,300 |
| Monthly Average Trade-In | $9,350 | N/A | N/A | $9,350 |
| Monthly Clean Trade-In | $10,200 | N/A | N/A | $10,200 |
| Monthly Clean Loan | $9,200 | N/A | N/A | $9,200 |
| Monthly Clean Retail | $12,075 | N/A | N/A | $12,075 |

## Vehicle Information

| | Trade-In / Loan | Retail |
|---|---|---|
| ☐ Certified Used | N/A | $675 |
| ☐ W/out Auto. Trans. | $-550 | $-625 |

NADA Used Car Guide and its logo are registered trademarks of National Automobile Dealers Association, used under license by J.D. Power. © 2020 J.D. Power